UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re                              )
                                   )     Case No. 17-24195-A-7
GOHAR ASLANYAN,                    )     Docket Control Nos. SS-2 &
                                   )     JWC-1
        Debtor.                    )     Date: December 18, 2017
                                   )     Time: 3:00 PM
                                   )

**MEMORANDUM**

The chapter 7 debtor, Gohar Aslanyan, moves to avoid a judicial lien held by Transport Funding, L.L.C., ("Transport") pursuant to 11 U.S.C. § 522(f)(1)(A).  That judicial lien secures a claim of approximately $39,963.48.

The judicial lien held by Transport is based on a writ of attachment recorded more than 90 days[1] before the bankruptcy case was filed.  That judicial lien encumbers the debtor's home on Hackberry Lane in Carmichael, California.

The debtor's home is encumbered by an unavoidable mortgage of $360,124.  The debtor maintains that because her home has a

---

[1]     Had the attachment lien been recorded less than 90 days prior to the bankruptcy, it would have terminated when the debtor filed this case.  See Cal. Civ. Pro. Code § 493.030(b).  And, because no judgment was entered by the court issuing the writ of attachment before the debtor's bankruptcy case was filed, the continued viability to the judicial lien, even if the debtor's motion is denied, depends on Transport's ability to obtain a judgment within three years.  See Cal. Civ. Pro. Code § 488.510(a); In re Southern California Plastics, Inc., 165 F.3d 1243, 1246 (9th Cir. 1999).

value of $460,000, and because she is entitled to a $100,000 homestead exemption, the judicial lien impairs her exemption and it may be avoided pursuant to section 522(f)(1)(A).

The only dispute between the parties is the value of the debtor's home.  Transport asserts that it has a value of $495,000, but the debtor maintains that it is worth only $460,000.

If the debtor is correct, application of the formula in 11 U.S.C. § 522(f)(2)(A) will result in the avoidance of Transport's lien.  If Transport is correct, $34,876.02 of its lien cannot be avoided; only $5,087.48 may be avoided.

Section 522(f)(2)(A) provides that a judicial lien impairs an exemption to the extent the sum of the judicial lien, the unavoidable lien, and the debtor's exemption amount exceeds the value of the property.

| | |
|---|---|
| JUDICIAL LIEN | $ 39,963.48 |
| UNAVOIDABLE LIEN | $360,124.00 |
| EXEMPTION | $100,000.00 |
| **TOTAL** | $500,087.48 |

Because $500,087.48 exceeds the debtor's valuation of $460,000 by $40,087.48, the entire judicial lien of $39,963.48 is avoidable if the debtor is correct about the value.

However, at Transport's valuation of $495,000, only $5,087.48 impairs the debtor's exemption.  A portion of the judicial lien, $34,876.02, will not be avoided if Transport is correct about the home's value.

On the issue of value, which was the only material disputed fact, the court received the testimony of the debtor's real

estate broker, Lisa McKee, and Transport's appraiser, Benjamin
Voros.

The court concludes that the home has a market value of
$479,000.  The court hastens to add that, even though $479,000 is
almost midpoint between Ms. McKee's opinion of $460,000 and Mr.
Voros' valuation of $495,000, the court has not averaged their
valuations nor has it otherwise combined them to arrive at a
compromise value.

Ms. McKee not only testified as to her opinion of the home's
value, but she is listing it for sale on behalf of the debtor.[2]
Since the home was listed on November 20, 2017, the debtor
rejected an offer of $450,000, accepted an offer of $460,000
(that the prospective buyer is no longer willing to perform
because of delays caused by the bankruptcy), and received an
offer of $479,000.  The latter offer was made on Saturday,
December 16.[3]

The $479,000 value arrived at by the court is based on the
latest offer received by the debtor.

Several arguments militate against basing the value on this
latest offer.  The court rejects these arguments.

First, a debtor's exemption and right to avoid a judicial
lien are determined as of the petition date.  See  In re Chiu,

---

[2]    Because the court ordered the chapter 7 trustee to
abandon the home as property of the estate, the bankruptcy is not
an impediment to a sale by the debtor.  See 11 U.S.C. § 554(b).

[3]    Ms. McKee indicated that this offer has not yet been
accepted by the debtor.  She wishes to know the court's decision
regarding the value of her home and the disposition of her lien
avoidance motion before accepting the offer.

1   266 B.R. 743, 751 (B.A.P. 9th Cir. 2001) (citing <u>In re Dodge</u>, 138

2   B.R. 602, 607 (Bankr. E.D. Cal. 1992)); <u>see</u> <u>also</u> <u>In re Kim</u>, 257

3   B.R. 680, 685 (B.A.P. 9th Cir. 2000).  This means that the value

4   of the subject property and the amount of the unavoidable

5   encumbrances are determined as of the petition date and not as of

6   the date the lien avoidance motion is filed or adjudicated.

7        The $479,000 offer was made almost six months after the case

8   was filed on June 26, 2017.  Nonetheless, both Ms. McKee and Mr.

9   Voros testified that today's market conditions have not changed

10  appreciably since June 2017.

11       Second, Ms. McKee suggested that because the $479,000 offer

12  requires the debtor to pay some of the buyer's closing costs, the

13  net value of the offer to the debtor is closer to $469,000.

14       When the bankruptcy court determines a debtor's exemption

15  rights in property, 11 U.S.C. § 522(a)(2) directs it to value

16  property at "market value as of the date of the filing of the

17  petition. . . ."  There is no provision in section 522(a)(2) or

18  in the statutory formula in section 522(f)(2)(A) mandating that a

19  debtor's likely costs of sale be taken into account when

20  ascertaining market value.

21       Liquidation costs or closing costs are not deducted from

22  market value in the context of a motion to avoid a judicial lien.

23  <u>See</u>, <u>e.g.</u>, <u>In re Wolmer</u>, 494 B.R. 783, 784 (Bankr. D. Conn.

24  2013);  <u>In re Barrett</u>, 370 B.R. 1, 3 (Bankr. D. Me. 2007) ("[A]

25  bevy of courts have opted against including hypothetical sales

26  costs and other transaction costs in the valuation of collateral

27  for the purpose of determining the fate of a judicial lien."); <u>In</u>

28  <u>re Sheth</u>, 225 B.R. 913, 918-19 (Bankr. N.D. Ill. 1998); <u>In re</u>

Sumerell, 194 B.R. 818, 827 (Bankr. E.D. Tenn. 1996); In re
Abrahimzadeh, 162 B.R. 676, 678 (Bankr. N.J. 1994); In re Yackel,
114 B.R. 349, 351 (Bankr. N.D. N.Y. 1990).

Therefore, whatever the transactional costs of a sale may
be, and regardless of whether they are borne by the seller or the
buyer, the market value of the property does not fluctuate
because of those costs.

Third, Transport argues that the value urged by the debtor
is unreliable because it is based on a sale that allegedly is
intended to satisfy only the mortgage and her $100,000 exemption.
The debtor has no incentive to seek more from a sale because it
will go toward satisfying Transport's lien.

Certainly this is a reason for caution and the court has
considered the possibility that the debtor and Ms. McKee are
calculating only what is necessary for the debtor to receive her
exemption when offering their opinion of value and marketing the
property for sale.

However, the court doubts that this possibility is a reality
largely because the property has been marketed for nearly three
months and the offers entertained by the debtor have risen from
$450,000 to $460,000 to $479,000.  Were the debtor intent on only
insuring her exemption she would not have presented the $479,000
offer to the court.

Also, if the debtor's only goal were to preserve her
exemption, it was unnecessary for the debtor to sell the
property.  This could have been accomplished without hiring a
real estate broker or hiring an attorney to prosecute a lien
avoidance motion.  Instead, the debtor could have allowed

5

Transport to execute upon its judicial lien.  In connection with
any execution sale, the debtor is guaranteed payment of her
exemption.  <u>See</u> Cal. Civ. Pro. Code § 704.800(a) (providing that
homesteaded property may not be sold by a judgment creditor
unless a bid is received that is sufficient to pay senior
encumbrances and the judgment debtor's homestead exemption).

Fourth, the court does not find the appraisal of Mr. Voros
to be convincing.

As noted by Ms. McKee, the debtor's home is unique, but not
in a good way.  It does not border a public street.  It is
sandwiched between a church and another home.  To its left and
right are two other homes.  The debtor's home is not visible from
the street and to access it, one must travel on a driveway
located on the property that obscures the front of the debtor's
home.  The debtor's front yard is a small blacktop used for
parking.

The debtor's home is not located within a cohesive
neighborhood.  There are wide variations in lot sizes, there are
no sidewalks in the vicinity of the debtor's home or those around
it, single family residences line one side of Hackberry Lane but
the opposite side consists of duplexes, a church and its parking
lot abut the back of the debtor's home, and the aerial photo in
Mr. Voros' appraisal shows significant acreage near the debtor's
home that either is undeveloped or not landscaped.

Comparison of the debtor's home to the three comparable
sales used in Mr. Voros' appraisal is revealing.  They are
located .84 to 1.89 miles away from the debtor's home in
different neighborhoods.  The photos of each indicates they are

located in well-maintained and landscaped single family
residential neighborhoods comprised of homes of similar quality,
construction, and age.  This is unlike the debtor's neighborhood.

It was suggested by Mr. Voros that 7138 Willey Way in
Carmichael was a particularly relevant comparable sale because
this property was accessed by a driveway used by two homes.
However, this property fronts on Willey Way; it is not behind or
surrounded by structures as is the debtor's home.

In short, while the comparable sales referenced in the
appraisal are similar to the debtor's home in terms of quality of
home construction, age, size, and amenities, they are not
situated in comparable neighborhoods.  The debtor's home suffers
in this regard.  Yet, the court sees no adjustment in the
appraisal that accounts for this difference.

When this difference is considered, the court believes a
value of less than $495,000 is likely.  The court concludes that
the home had a fair market value of $479,000 when this case was
filed.

As noted above, the judicial lien, the unavoidable lien, and
the debtor's exemption total $500,087.48.  With a property value
of $479,000, $21,087.48 of the judicial lien impairs the debtor's
exemption and may be avoided.  But, $18,876 of Transport's lien
remains on the debtor's home because it does not impair her
exemption.  See 11 U.S.C. § 522(f)(2)(A).

Also before the court is Transport's motion for relief from
the automatic stay.  It seeks leave to return to state court in
order to obtain the entry of a judgment in its suit against the
///

debtor.[4]  It seeks to do this, not to establish and enforce a personal liability of the debtor, but to "perfect" its attachment lien.  See First Fed. Bank of Calif. v. Robbins (In re Robbins), 310 B.R. 626, 630 n. 4 (B.A.P. 9th Cir. 2004).

The motion will be dismissed because it is moot.  As noted above, the court has compelled the trustee to abandon the debtor's home.  Consequently, the home is no longer property of the estate.  Further, the debtor's discharge was entered on December 5.

Given that the bankruptcy estate no longer has an interest in the debtor's home, and given the entry of the debtor's discharge, the automatic stay has expired as a matter of law. See 11 U.S.C. § 362(c)(1) & (c)(2).  The house and the debtor are no longer protected by the automatic stay.  There is nothing for the court to terminate or modify.

This is not to say that the court agrees (or disagrees) that Transport is free to start where it left off in state court in order to perfect its judgment lien.  See Diamant v. Kasparian (In re Southern California Plastics Inc.), 165 F.3d 1243 (9th Cir. 1999); Sciarrino v. Mendoza, 201 B.R. 541, 544-45 (E.D. Cal. 1996).  Cf. Montano Cigarette Candy & Tobacco Inc. (In re Shivani), 2004 WL 484549, at *3-4 (Bankr. D. Conn. March 11, 2004); FDIC v. Debtor & Trustee (In re Moscoso Villaronga), 111 B.R. 13, 17-18 (Bankr. D.P.R. 1989).  That is an issue for another day in, perhaps, another court.

---

[4]     Entry of a judgment may be perfunctory.  Before the bankruptcy case was filed, Transport's motion for summary judgment was granted.

1    The attorney for the debtor shall lodge conforming orders on
2    both motions.
3    Dated: December 20, 2017                    By the Court

4

5                                                _____
6                                                Michael S. McManus
                                                 United States Bankruptcy Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Instructions to Clerk of Court
## Service List – Not Part of Order/Judgment

     The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC.

Gohar Aslanyan
4535 Hackberry Lane
Carmichael CA 95608

J. Michael Hopper
PO Box 73826
Davis CA 95617

Office of the U.S. Trustee
Robert T Matsui United States
Courthouse
501 I Street, Room 7-500
Sacramento CA 95814

Jennifer Witherell Crastz
15910 Ventura Blvd 12th Fl
Encino CA 91436-2829

Scott D. Shumaker
1007 7th Street, Suite 306
Sacramento CA 95814